UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leapers, Inc.,

    Plaintiff,

v.                                                                               Case No.: 11-15058
                                                                             Honorable Sean F. Cox

First Quality Distributors, Inc., and
Paul Rappaport,

    Defendants.

_____/

OPINION & ORDER

      Plaintiff Leapers, Inc. ("Leapers") brought this trademark and copyright infringement action against First Quality Distributors, Inc. ("First Quality") and its President, Paul Rappaport ("Rappaport") (taken together, "Defendants"). In response, First Quality filed a counterclaim, seeking a declaratory judgment that it is not infringing on Leapers' trademarks and copyrights, and also alleging violations of the Lahnam Act and fraud. The matter is currently before the Court on Defendant Paul Rappaport's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and on Plaintiff's Motion to Dismiss Counterclaims 5-9. The parties have fully briefed the issues and the Court declines to hold oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated below, the Court shall DENY Rappaport's motion to dismiss for lack of personal jurisdiction, and GRANT Leapers' motion to dismiss counterclaims 5, 6, 7, 8, and 9.

1

**BACKGROUND**

Leapers is a Michigan corporation in the business of supplying shooting, hunting and outdoor gear. (Complaint at ¶ 7). At issue in this case is Leapers' UTG® brand of shooting, hunting, and outdoor equipment. (*Id*. at ¶ 9). In connection with the UTG brand, Leapers has registered the following trademarks with the United States Patent and Trademark Office: UTG – Reg. No. 3091025, UTG PRO – Reg. No. 3935736, UTG & DESIGN – Reg. No. 3800794, and UNDER THE GUN – Reg. No. 3091026.[1] (*Id.*).

In December 2003, First Quality became an authorized dealer of Leapers products. (*Id*. at 11). First Quality is a New Jersey corporation, and its President, Paul Rappaport, is a New York resident.

In 2008, First Quality launched a website (the "Website") with the domain name www.U-T-G.com (the "Infringing Domain Name"). (*Id.* at ¶ 12). Leapers alleges that in 2008, it learned that First Quality was marketing its own brand of shooting equipment, under the marks ULTIMATE ARMS and UAG, on the Website and through other online marketplaces such as eBay.com and Amazon.com. (*Id*. at ¶ 13).

In early 2011, Leapers contacted Defendants and asserted that Defendants were improperly using the UTG Marks, as well as images belonging to Leapers, on the Website. (*Id.* at ¶ 18). In an email dated February 21, 2011, Leapers representatives expressed the following concerns to Defendants: (1) Defendants were selling counterfeit UTG products on the Website and when purchasing these products, customers believed they were purchasing UTG products;

---

[1]For ease of reference, the Court will refer to the UTG and UTG & DESIGN trademarks as the "UTG Marks."

and (2) Defendants' use of the UTG Marks on the Website created confusion among customers and misrepresented that Defendants were actually the manufacturer of UTG products (Leapers). (2/21/2011 Email, Doc. No. 16, Ex. 1).

After Leapers complained to Defendants, Defendants made minor changes to the Website. (*Id*.). Leapers notified Defendants that the changes to the Website were not sufficient, and Defendants shut down the Website soon thereafter. (*Id*.)

On November 15, 2011, Leapers filed its complaint alleging: Count I – Trademark Infringement; Count II – Unfair Competition and False Designation of Origin; Count III – Cybersquatting Under 15 U.S.C. § 1125(d)(1)(A); Count IV – Trademark Dilution Under 15 U.S.C. § 1125(c) and Common Law Trademark Dilution; and Count V – Copyright Infringement.

On January 11, 2012, First Quality filed an Answer to Leapers's Complaint and also filed a Counterclaim. (D.E. No. 11). First Qualit Counterclaim alleges: Count I – Declaratory Judgment of Trademark Non-Infringement; Count II – Declaratory Judgment for Non-Dilution of Alleged Trademark Rights; Count III – Non-Infringement of Copyrights; Count IV – Non-Infringement for Alleged Cybersquatting; Count V – Mislabeling in Violation of the Lanham Act; Count VI – False Designation of Origin in Violation of the Lanham Act; Count VII – Fraud Under Michigan State Law; Count VIII – Unfair Competition Under Michigan State Law;[2] Count IX – unfair and illegal business practices in violation of Michigan common law.[3]

---

[2]First Quality's unfair competition claim is mislabeled as its "Seventh Counterclaim."

[3]First Quality's claim of "unfair and illegal business practices in violation of Michigan common law" is mislabeled as its "Eighth Counterclaim."

3

Also on January 11, 2012, Rappaport filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) in lieu of an answer (D.E. No. 12). On February 6, 2012, Leapers filed a Motion to Dismiss Counterclaims 5-9. (D. E. No. 18).

## LEGAL STANDARD

Rappaport brings his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), asserting that the Court lacks personal jurisdiction over him. When bringing an action in federal court, the plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936)). Where, as here, a district court "relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' *Am. Greetings Corp. v. Cohn*, 839 F.2d. 1164, 1169 (6th Cir. 1988), and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists to survive dismissal.'" *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). "In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal." *Id*.

Leapers brings its Motion to Dismiss Counterclaims 5-9 pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ*., 428 F.3d 223, 228 (6th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

The Court need not accept a complaint's allegations as true if the allegations consist of "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.  In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ*., 76 F.3d 716, 726 (6th Cir. 1996).

## ANALYSIS

I.      Does this Court have personal jurisdiction over Rappaport?

Personal jurisdiction exists over a nonresident defendant provided there are sufficient minimum contacts between the defendant in the forum state and that maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Depending on the type of minimum contacts in a case, personal jurisdiction can be specific or general." *Air Products*, 503 F.3d at 550.  Specific (or limited) personal jurisdiction arises from a defendant's activities in the state or if those activities had an in-state effect. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).  General personal jurisdiction requires the defendant to have carried on "a continuous and systematic part of its general business" in Michigan. *Neogen*, 282 F.3d at 889.

The basis for Rappaport's motion is that any contact he had with Michigan was the result

of his work on behalf of First Quality. Rappaport contends that the actions of First Quality alleged in Leapers' complaint cannot be imputed on to him in his personal capacity, and therefore he has no "continuous and systematic" contact with Michigan. Rappaport also contends that Leapers has not alleged any facts to suggest that he purposefully availed himself of the Michigan forum.

All of the allegations in Leapers' complaint refer to both "Defendants." In the "Jurisdiction and Venue" section of its complaint, Leapers specifically alleges:

> This Court has personal jurisdiction over Defendants under 28 U.S.C. §1391 and M.C.L. §600.701 et. seq. by virtue of, inter alia:
>
> (a) Defendants' relevant actions taken in, and contacts with, Michigan, including by conducting business and using in commerce trademarks relevant to this dispute in Michigan. Defendants advertise and sell relevant products for sale across the country, including in Michigan;
>
> (b) Defendants' extensive business dealings and communications with Leapers in Michigan, including dealings that relate to the subject matter of this Complaint; and
>
> (b) the fact that Defendants took action, and caused consequences to occur, in Michigan resulting in an action for tort. By way of example, and as described further below, Defendants intentionally infringed on intellectual property rights that it knew were owned by Leapers. Defendants' actions were expressly aimed at Michigan, and caused harm in Michigan that Defendants knew was likely to be suffered.

(Complaint at ¶ 5).

Leapers' response focuses on whether Rappaport has purposefully availed himself of the privileges of conducting business in Michigan. Leapers does not set forth an argument for general personal jurisdiction, and therefore, the Court will look to whether specific (or limited)

personal jurisdiction applies.

In determining whether a district court has personal jurisdiction over a moving defendant the court must: 1) determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over the defendant; and, if so, 2) determine whether the exercise of that jurisdiction comports with constitutional due process.

### A.  Does Michigan's Long-Arm Statute authorize jurisdiction?

Leapers asserts that this Court has specific jurisdiction over Rappaport based on Michigan's Long-Arm Statute.

Michigan's long-arm statute, MCL § 600.705, provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L.  § 600.705.

The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen*, 385 Mich. 195, 199-200 (1971).  "[W]here a state's long-arm statute extends to the constitutional limits of the Due Process Clause, the two inquiries are merged; courts must only determine whether assertion of personal jurisdiction over the defendant violates the Due Process Clause.*"*

*Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, 110 F.3d 66 at * 2 (Table) (6th Cir. 1996). Accordingly, the Court shall proceed to due process portion of the personal jurisdiction analysis.

### B.  Does the exercise of jurisdiction over Rappaport comport with due process?

The Due Process Clause assures that defendants do not get hailed into court in a forum where they have no meaningful "contacts, ties, or relations." *International Shoe*, 326 U.S. at 316.  The Sixth Circuit has established a three-part test (the *Mohasco* test) for determining whether the exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir. 1989)).  Courts do not apply these criteria mechanically "because the inquiry into whether jurisdiction exists turns on the facts of the individual case at hand."  *Chrysler Corp. v. Uptown Motorcars-Hartford, Inc.*, 173 F.3d 854, 1999 WL 196558 (6th Cir. 1999).

As an initial matter, the Court must address Rappaport's claim that his actions as a representative for First Quality cannot be a basis for exercising personal jurisdiction.  As pointed out by Leapers, Rappaport is essentially requesting the Court to apply the "fiduciary shield doctrine" as a way to preclude the exercise of personal jurisdiction over him.  The fiduciary shield doctrine simply states that "jurisdiction over a corporate officer cannot be predicated merely upon

jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 697 (6th Cir. 2000) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).

In *Balance Dynamics*, the Sixth Circuit rejected the use of the fiduciary shield doctrine as an absolute bar to personal jurisdiction over an out-of-state, corporate agent. The court in *Balance Dynamics* concluded that a district court must still apply the personal jurisdiction analysis to a corporate agent's conduct to determine whether personal jurisdiction over the agent comports with due process, regardless if that conduct was made in the individual's official capacity as agent for the corporation. Specifically, the court stated:

> While it is true that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," *Weller v. Cromwell Oil Co.*, 504 F.2d at 929, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Id*. at 698. Thus, the Court must determine whether Rappaport's actions, in his personal or official capacity, subject him to personal jurisdiction in this Court.

       i. Purposeful Availment Requirement:

The purposeful availment requirement, or the requirement that the defendant cause a consequence in the forum state, "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewski,* 471 U.S. 462, 473 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770,

774 (1984)). "'So long as a commercial actor's efforts are 'purposely directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996) (quoting *Burger King Corp.*, 471 at 476). Physical presence in the forum, however, is not required. *Id.*

Leapers points to a number of actions by Rappaport in which he purportedly purposefully availed himself of the privilege of acting in Michigan or causing consequence in Michigan. First, Leapers asserts that "Rappaport personally negotiated, then managed, a business relationship between his company and Leapers over the course of almost eight years." (Response Br. at 14). Leapers supports its claims with the affidavit of Dung-Ju Ding, who is the President of Leapers. Ding attests, "In 2003, Rappaport approached Leapers and negotiated an agreement through which [First Quality] became an authorized distributor of Leapers' products." (Ding Aff. at ¶ 6). Ding further attests that "Rappaport was always the primary point of contact between Leapers and First Quality" and "any business conversation of any substance between Leapers and First Quality was always with Rappaport." (*Id.* at ¶ 8). Moreover, the "majority of the orders of new products that Leapers received from First Quality during the companies' nearly 8-year relationship came from Rappaport." (*Id.* at ¶ 9).

Leapers also cites to a number of email and telephone communications between Leapers and Rappaport. One email from a Leapers employee to Rappaport, attached as Exhibit E to Leapers' complaint and dated October 28, 2008, describes a visit to Michigan by Rappaport during which he discussed conducting business with Leapers. In the email, the Leapers employee states:

10

> We appreciate your visit in August. I hope you also gained a better understanding of all the intense efforts Leapers engages in to support our loyal customers. We very much look forward to your follow-up visit to explore further business opportunities.
>
> For the upcoming holiday season, please find some of the newest products available or soon to be available in the enclosed. We would like to thank you greatly for your continuous marketing and advertising effort of our products.

(Complaint, Ex. E). Leapers also references communications between Leapers representatives and Rappaport that discuss the Website and the issues that are the subject of Leapers' claims.

In viewing the pleadings, affidavits, and evidence in a light most favorable to the plaintiff, the Court finds that Rappaport's business relationship with Leapers sufficiently establishes his purposeful availment in the State of Michigan and meets the standards for purposeful availment set forth in *Air Products* and *Burger King*. In *Air Products*, the Sixth Circuit held that "where a defendant 'has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there.'" *Air Products*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 476)). Like the defendant in *Air Products*, Rappaport, even if only in his capacity as an officer of First Quality, created continuing obligations between himself and Leapers. As represented by Ding in her affidavit, Rappaport negotiated a distribution agreement with Leapers on behalf of his company in 2003. Furthermore, all business discussions with First Quality were made through Rappaport, and Rappaport would place the orders on behalf of First Quality. Thus, for a period of over 8 years, Rappaport reached out beyond his home state and maintained a continuing business relationship with a Michigan business. Based on these factors, Rappaport's contacts

11

with Leapers are sufficient to establish that he purposefully availed himself of the privilege of acting in Michigan or causing a consequence in Michigan.

Leapers also contends that Rappaport purposefully availed himself in Michigan because he caused tortious consequences in Michigan. Leapers relies on *Calder v. Jones*, 465 U.S. 783 (1984), in which the Supreme Court approved the application of the "effects test" to determine whether the effects within a particular state resulting from tortious conduct by a defendant are sufficient to establish purposeful availment in that state. Many courts in this district have held that a defendant's infringing use of a trademark or copyright can be the basis for personal jurisdiction if the defendants intended to, and did, cause tortious injury to the plaintiff in the plaintiff's home state. *See Ford Motor Co. v. Great Domains, Inc.*, 141 F.Supp. 2d 763, 774 (E.D. Mich. 2001); *Audi AG and Volkswagon of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734, 745 (E.D.Mich. 2004); *Visage Spa LLC v. Salon Visage, Inc*., 2006 WL 2130512 at *8 (E.D.Mich. 2006); *Providers Access and Saving Sys., Inc. v. The Regence Group, Inc.*, 2007 WL 1106145 (E.D. Mich. 2007).

In *Great Domains,* Judge Cleland held that in order to satisfy the "effects test" in cases involving trademark and copyright infringement, the plaintiff must demonstrate: (1) that the brunt of the injury was felt in Michigan, (2) that the defendant's use of plaintiff's marks was

12

intentional or deliberate, and (3) that the defendant's acts were expressly aimed[4] at the State of Michigan.[5]

Because Leapers has established a *prima facie* showing of personal jurisdiction through Rappaport's business contacts with Leapers in Michigan, the Court need not delve into a lengthy "effects test" analysis. It is important to note, however, that in addition to Rappaport's business contacts in Michigan, Leapers has provided evidence showing Rappaport's substantial involvement in the launch, development, operation and use of the Website which utilized the Infringing Domain.[6] (*See* 2/18/2011 email; 2/21/2011 email, 2/23/2011 email, 3/09/2011 email).

---

[4]Judge Cleland also stated:

> [T]he court will consider two factors in determining whether registering a domain name is an act "expressly aimed" at a trademark owner: (1) the likelihood of confusion as to who controls the domain that is created by the domain name itself and (2) the level of individualized targeting at the trademark owner. These factors are inversely proportionate to each other. Thus, if the likelihood of confusion created by the domain name is high, a low-level showing of individual targeting will be required. If the likelihood of confusion is low, the level of individual targeting required will be high.

*Great Domains*, 141 F.Supp.2d at 776. In this case, Leapers has provided evidence that there is a high likelihood of confusion as to who controls the Infringing Domain. (*See* Customer Email, Complaint, Exs. C & D). Moreover, Rappaport admitted that the entire purpose of the Website was to sell only UTG products, thus displaying his intentions of individually targeting products produced by Leapers. (*See* 3/9/2011 email).

[5]Similar to the allegations in this case, the defendants in *Great Domains*, *Audi AG*, *Visage Spa*, and *Providers Access*, improperly registered domain names that incorporated a plaintiff's trademarks or displayed a plaintiff's trademarks and copyrighted materials on websites in a manner that caused confusion.

[6]Rappaport contends that he has not infringed on any rights of Leapers because it used Leapers' UTG Marks with the consent of Leapers. However, the merits of Leapers' claims against Rappaport are not currently at issue. The only issues currently before are whether the Court has personal jurisdiction over Rappaport and whether the Court should dismiss First

13

Based upon the evidence presented by Leapers, it is clear that the circumstances surrounding Rappaport's use of the UTG Marks was more than a situation in which a defendant merely used a mark knowing that the owner of the mark lives in Michigan. *See Providers Access*, 2007 WL 1106145 at *7 (suggesting that "something more is necessary to demonstrate that the defendant's actions were aimed at the forum state than use of a mark knowing that the owner of the mark lives in the forum."). Rather, Rappaport's use of the UTG Marks was directly tied to the ongoing business relationship between First Quality and Leapers. In viewing the affidavits and evidence in a light most favorable to Leapers, Rappaport's alleged acts of online infringement were directed at Leapers. Thus, Leapers, a Michigan corporation, has allegedly suffered damages in this forum as a result of the infringement.

      ii. <u>Actions Arising Out of Requirement:</u>

The second prong of the Due Process test is that the cause of action must arise from the defendant's contacts with the forum state. The Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of,' the defendant's contacts. . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (internal citations omitted); s*ee also Compuserve,* 89 F.3d at 1267 (6th Cir. 1996) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."). In addition, the Sixth Circuit has "characterized this standard as a 'lenient standard' and ha[s] explained that the cause of action need not

---

Quality's counterclaims 5 through 9.

'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

The Court concludes that the "arising out of" requirement has been satisfied in this case. If not for Rappaport's business relationship with Leapers and his substantial involvement in creating, developing, and operating the Website, First Quality's Website (and other online storefronts) would not have allegedly infringed upon Leaper's UTG Marks. (*See Theunissen*, 935 F.2d at 1461 (applying a "but for" analysis)).

        iii. The Reasonableness Requirement:

The third prong of the Due Process test is whether the exercise of jurisdiction is reasonable. In determining whether the exercise of jurisdiction is reasonable, the Court should consider the following factors: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; and 4) other states' interests in securing the most efficient resolution of the controversy. *Air Prods. and Controls, Inc.*, 503 F.3d at 554.

Where, however, the first two prongs are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Id.* As stated above, the first two prongs of the due process test have been met. Thus, an inference of reasonableness arises.

II.    Should the Court Dismiss First Quality's Counterclaims 5, 6, 7, 8 and 9?

As stated above, First Quality filed a counterclaim on January 11, 2012. Counts 5 through 9 of the counterclaim allege the following: Count V – Mislabeling in Violation of the Lanham Act; Count VI – False Designation of Origin in Violation of the Lanham Act; Count VII

– Fraud Under Michigan State Law; Count VIII – Unfair Competition Under Michigan State Law;[7] Count IX – unfair and illegal business practices in violation of Michigan common law.

Counterclaims 5, 6 and 7 are based upon the allegation that "upon information and belief, [Leapers] has violated United States law. . . by importing gun parts from the People's Republic of China into the United States" and "deliberately. . . mislabeled those illegal products as manufactured in Taiwan." Counterclaims 8 and 9 state, "Leaper's activities complained of herein, including, its fraudulent and false acts, and its baseless and vexation claims herein, constitute unfair and illegal business practices. . . ."

Leapers asserts that First Quality's counterclaims should be dismissed for failure to state a claim under Fed. R. 12(b)(6) because the claims do not meet the pleadings standards set forth by the Supreme Court in *Twombly* and *Iqbal*.

In *Iqbal*, the Supreme Court stated "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Yet, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Allegations of fact that, if taken as true, would create a merely a conceivable claim, rather than plausible claim, are insufficient.

---

[7] First Quality's unfair competition claim is mislabeled as its "Seventh Counterclaim."

Leapers specifically objects to First Quality's counterclaims because they are allegations based "upon information and belief." Although the parties argue over whether claims based "upon information and belief" can state plausible claims for relief, the Court need not address this specific issue. Instead, [d]etermining whether a complaint states a plausible claim for relief [is]. . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 697. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (*Id.*) (citing FED. RULE CIV. PROC. 8(a)(2)).

First Quality's counterclaims appear to be completely unrelated to Leapers' claims in its complaint. Like Leapers, First Quality also alleges claims under the Lanham Act. However, First Quality's counterclaims are based upon a completely different set of facts than are alleged in Leapers' complaint.

First Quality asserts that its allegations "upon information and belief" satisfy the requirements of *Twombly* and *Iqbal* because the "facts are peculiarly within the possession and control" of Leapers. (First Quality Resp. at 6). While there is no steadfast rule against pleading factual allegations "upon information and belief," the Court agrees with Leapers that First Quality's allegations do not meet the pleading standards of *Twombly* and *Iqbal*. First Quality essentially alleges five separate counts based upon two factual allegations: 1) Leapers has illegally imported gun parts from China; and 2) Leapers mislabeled those gun parts as manufactured in Tawain in order to mislead purchasers of its products.

In defense of its lack of factual detail, First Quality cites to a number of cases, none from this circuit, in which courts have found that a party's pleadings "upon information and belief" satisfied the plausibility standards *Twombly*. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2nd Cir. 2010); *Merchant & Gould, PC v. Premiere Global Services, Inc.*, 749 F.Supp.2d 923 (D. Minn. 2010); In each of these cases, however, the pleadings contained significantly more factual detail than what has been presented in First Quality's counterclaim. The facts alleged in those pleadings included relevant dates, specific identifications of the products or services at issue, and detailed accounts of how particular statutes were violated. Even considering the facts alleged in previous pleadings appearing in the record, First Quality's pleadings are devoid of any such facts.

Although Fed. R. Civ. P. 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," the two basic facts alleged by First Quality do not move First Quality's claims, particularly its Lanham Act claims,[8] from conceivable to plausible, as required by *Twombly*. First Quality's counterclaims 5 through 9 do not permit the court to

---

[8]The Sixth Circuit has established a five-element test for proving liability under the Lanham Act. The plaintiff must establish that:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence a deceived consumers' purchasing decisions; 4) the advertisements were introduced into interstate commerce; 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Balance Dynamics Corp.*, 204 F.3d at 689. (citing *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

18

infer more than the mere possibility of misconduct, and therefore do not comply with Rule 8(a). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6 Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). Based on the two bare factual assertions by First Quality, the Court cannot reasonably infer that Leapers is in violation of the Lanham Act or liable under any of First Quality's other causes of action set forth in counterclaims 5, 6, 7, 8, or 9.

With respect to First Quality's counterclaims 7, 8 and 9, First Quality relies on the facts set forth in counterclaims 5 and 6. As a result, First Quality again fails to plead facts that contain direct or inferential allegations respecting all material elements to sustain a recovery under each cause of action. In fact, in all but First Quality's fraud claim,[9] First Quality does not even go so far as to provide a threadbare recital of the elements of the claim.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant Paul Rappaport's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (D.E. No. 12) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Counterclaims 5-9 (D.E. No. 18) is GRANTED.

---

[9]In addition to failing to provide factual support for its fraud claim, First Quality fails to plead its fraud claim with particularity, as required by Fed. R. Civ. P. 9(b). Because First Quality has not met the normal pleading standard of *Twombly* and *Iqbal*, it follows that First Quality has also failed to plead its fraud claim with particularity.

IT IS FURTHER ORDERED that First Quality's counterclaims 5, 6, 7, 8, and 9 are DISMISSED. Accordingly, the only claims remaining from First Quality's counterclaim are counterclaims 1, 2, 3, and 4.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 15, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 15, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager